**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANK O'BRIEN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  20-5907** |
| | : | |
| **SOUTHEASTERN PENNSYLVANIA** | : | |
| **TRANSPORTATION AUTHORITY** | : | |
| **POLICE DEPARTMENT** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                 **June 9, 2021**

A longtime employee resigning after his employer extends a Performance Improvement Plan based on several unresolved disciplinary issues may allege constructive discharge because his former employer extended his performance obligations based on age discrimination or to retaliate for complaining of age discrimination. While those serious claims may proceed into discovery if properly plead, the former employee must adduce evidence beyond his own say-so to defeat the employer's anticipated motion for summary judgment. He must adduce evidence the extended Performance Improvement Plan or other employer conduct created such intolerable conditions warranting constructive discharge to constitute an adverse employment action.  If he can do so, he must then show the employer's reasons based on demonstrated performance deficiencies are pretext for age discrimination. He must also show some temporal connection between his constructive discharge and his earlier or contemporaneous age discrimination complaints. After review of the detailed discovery, we today find no evidence beyond the employee's allegations suggesting a genuine issue of material fact as to an adverse employment action based on his age. Even if we could find disputed fact issues creating a possible constructive discharge, we find no evidence of the employer's stated reasons for its actions are pretext for age discrimination. We also find the claimed retaliation of discipline and performance obligations

began before the employee began claiming age discrimination.  He is unable to proceed on a retaliation claim. We grant the employer's motion for summary judgment and dismiss the former employee's claims.

## I.     Undisputed material facts.[1]

Frank O'Brien began working as a Transit Police Officer for Southeastern Pennsylvania Transportation Authority ("SEPTA") in May 1988 as a twenty-four year old.[2] Mr. O'Brien worked as a Transit Police Officer until around 1993, when SEPTA promoted him to Sergeant.[3] SEPTA again promoted Mr. O'Brien to Lieutenant around 1999.[4] Mr. O'Brien remained a Lieutenant from 1999 until he retired on November 1, 2019 at fifty-five years old.[5]

Mr. O'Brien's responsibilities as a lieutenant included, among other things, assessing crimes and other issues within his Patrol District, deploying police personnel to address issues within his Patrol District as needed, monitoring the sergeants and officers under his command and taking disciplinary action when appropriate, acting as a community liaison, and keeping track of officers' performance statistics.[6] Multiple sergeants directly reported to Mr. O'Brien at any given time.[7]

Mr. O'Brien reported to Captain James Reynolds for approximately six years before Mr. O'Brien retired.[8] Captain Reynolds reported to Inspector Charles Lawson for approximately  two or three years before Mr. O'Brien retired.[9] Inspector Lawson reported to Thomas Nestel, SEPTA's Chief of Police, during Mr. O'Brien's final two or three years.[10]

Mr. O'Brien treated with Dr. Sanjay Upadhyay for stress and anxiety in 2017 and 2018 which he claims arose from work concerns.[11]

### *SAM Employee progressive discipline process.*

As a lieutenant, Mr. O'Brien served as a supervisory, administrative, and managerial level employee ("SAM Employee").[12] SEPTA subjects SAM Employees to a progressive discipline process consisting of five steps: (1) written reprimand; (2) one-day suspension; (3) three-day suspension; (4) five-day suspension; and (5) termination.[13] This disciplinary process can be initiated by complaints from civilians, the SAM Employee's supervisor(s), or SEPTA's Office of Professional Responsibility ("Internal Affairs").[14]

The SAM Employee receives an Employee Process Notice once the disciplinary process is initiated. The Employee Process Notice informs the SAM Employee of SEPTA beginning an Internal Affairs investigation, provides the case number associated with the investigation, and affords an opportunity to submit information relevant to the investigation.[15] After the Employee Process Notice has been issued and the SAM Employee has been given an opportunity to respond, a Police Board of Inquiry, a disciplinary board consisting of three employees ranked higher than the SAM Employee, meets to privately review the matter.[16] The SAM Employee is not made aware of who is on the Board.[17] The Board makes a recommendation to the Chief as to whether the SAM Employee should be disciplined.[18] The SAM Employee can appeal an issuance of discipline.[19]

SEPTA also counsels SAM Employees.[20] Counseling is not considered a part of the disciplinary process.[21]

### *SEPTA disciplines Mr. O'Brien in 2017 and 2018.*

Captain Reynolds issued Mr. O'Brien a written reprimand on May 25, 2017 for failing to properly find a replacement for a sergeant who called out sick a few weeks earlier.[22] Mr. O'Brien did not appeal this discipline through the grievance process.[23] He swears he "verbally" appealed

the discipline to Captain Reynolds, who informed Mr. O'Brien the other lieutenant involved, Lieutenant Cynthia Santiago, received harsher discipline than Mr. O'Brien.[24]

Captain Reynolds issued Mr. O'Brien another notice of discipline almost six months later on November 25, 2017 for failing to secure enough locker space for incoming personnel in his District.[25] Mr. O'Brien was transferring out of his position as lieutenant of the District at the time of the incident.[26] SEPTA designated Lieutenant Timothy Catto to replace Mr. O'Brien.[27] SEPTA disciplined both lieutenants.[28] Lieutenant Catto received a written reprimand because he did not have a disciplinary history.[29] SEPTA issued Mr. O'Brien a one-day suspension because of his May 2017 written reprimand.[30]

Mr. O'Brien appealed the November 2017 one-day suspension.[31] SEPTA assigned the appeal to Captain Daryl Jones.[32] Captain Jones granted Mr. O'Brien's appeal and withdrew the November 2017 discipline on January 31, 2018 after concluding Mr. O'Brien presented sufficient evidence SEPTA did not afford him the right to respond to the impending discipline through an employee process notice.[33]

### Mr. O'Brien begins filing internal race and gender discrimination complaints after learning SEPTA did not discipline Lieutenant Santiago because she claimed discrimination.

Mr. O'Brien filed a complaint with SEPTA's Equal Employment Opportunity, Affirmative Action, and Employee Relations Department on January 17, 2018 relating, at least in part, to the May 2017 discipline resulting in a one-day suspension.[34] Mr. O'Brien alleged Lieutenant Santiago did not receive discipline for her involvement in the May 2017 incident.[35] Lieutenant Santiago told Mr. O'Brien she thought SEPTA did not discipline her because she had a pending discrimination complaint against SEPTA.[36] Lieutenant Santiago also allegedly told Mr. O'Brien in October 2017 Captain Reynolds attempted to discipline her in a separate incident "but when she told him she would file a discrimination complaint he decided not to discipline her."[37] Based on these

4

comments, Mr. O'Brien alleged he "became aware that the decision to issue me discipline on May 25, 2017 was based on my gender and race."[38]

Captain Reynolds completed – and Inspector Mark Dorsey reviewed – Mr. O'Brien's fiscal year 2018 (review period 2017) evaluation for Mr. O'Brien's review around October 21, 2017.[39] SEPTA found Mr. O'Brien "Meets Expectations" for his "Final Performance Rating," as well as for "Overall Rating for Job Skills/Competencies," "Overall Rating for Achievement of Goals & Objectives," and numerous specific categories reviewed.[40] SEPTA also found Mr. O'Brien "Needs Improvement" for "Quality of Work," "Teamwork/Cooperation," and "Leadership."[41] Captain Reynolds commented "Lieutenant O'Brien has the intelligence to excel in his position but at times looks for the easy way of doing things. The Organization requires more."[42]

Mr. O'Brien responded to this evaluation by alleging Captain Reynolds issued him a poor performance evaluation on October 21, 2017 which included "many derogatory comments, including the discipline was based on my gender and race."[43] Mr. O'Brien alleged he made written comments on this evaluation disagreeing with Captain Reynolds, initialed these comments, and signed the evaluation.[44] Mr. O'Brien alleged Captain Reynolds issued the evaluation out of anger with Mr. O'Brien's comments and accused Mr. O'Brien of stabbing him in the back.[45]

SEPTA's Employee Relations Department assigned Ekaette Oduok to investigate Mr. O'Brien's complaint.[46] SEPTA concluded Mr. O'Brien adduced no evidence of discrimination.[47]

*SEPTA provides Mr. O'Brien's 2018 performance evaluation.*

Mr. O'Brien received his annual performance evaluation for the fiscal year 2019 (review period 2018) around October 18, 2018.[48] Captain Reynolds completed his evaluation and Inspector Lawson reviewed it.[49] SEPTA found Mr. O'Brien "Meets Expectations" for his "Final

Performance Rating," "Overall Rating for Job Skills/Competencies," "Overall Rating for Achievement of Goals & Objectives," and all specific categories reviewed except "Initiative."[50]

### *SEPTA assigns Mr. O'Brien to 7C.*

Four months later, SEPTA assigned Mr. O'Brien to Patrol District 7, C Tour ("7C") on February 17, 2019.[51] Patrol District C covers SEPTA's entire Broad Street Line and C Tour refers to a 3:00 PM to 11:00 PM shift.[52] 7C has a supervisory group consisting of one lieutenant and two sergeants.[53]

SEPTA assigns patrol districts to every lieutenant and sergeant.[54] Police officers, on the other hand, may choose their assignments once or twice each year based on a seniority system.[55] SEPTA assigned Sergeant Domenic Barone, born in 1977, and Sergeant Matthew Wentz, born in 1986, to 7C on the same day as Mr. O'Brien.[56]

Mr. O'Brien reported 7C's fare evasion statistics during a staff meeting on April 4, 2019.[57] Captain Reynolds gave Mr. O'Brien a Counseling Form later the same day which, in relevant part, read:

> During Staff Review on April 4, 2019 while presenting the statistics for your command, you reported the fare evasion numbers as 1 for 70 and followed this up with your intention to get with your sergeants and get some details at your high stations. These numbers are unacceptable and quite frankly came as quite a surprise to not only your superiors but the entire room of commanders
> …
>
> It is strongly suggested that you become the sounding board for your squad on how important fare evasion apprehension is to you. Give the same message to your two sergeants. This is not a Captain said so message but a concerned District 7 Commanders message.[58]

Mr. O'Brien signed the Counseling Form on April 5, 2019.[59] SEPTA did not discipline Mr. O'Brien in connection with these fare evasion apprehension statistics.[60]

***SEPTA places Mr. O'Brien on a Performance Improvement Plan.***

Inspector Lawson verbally informed Mr. O'Brien on April 11, 2019 he would be placed on a ninety-day Performance Improvement Plan ("PIP").[61]  Captain Reynolds also attended the April 11th meeting.[62]  Later that day, Inspector Lawson, Chief Nestel, and Captain Reynolds communicated via email about the substance of Mr. O'Brien's PIP memorandum.[63]  One week later on April 18, 2019, Chief Nestel emailed Mr. O'Brien:

> I am becoming more and more concerned about your lack of intensity and focus on helping me manage the Transit Police Department. Your recent missteps which include District 7 officers taking lunch (without notifying radio) during school dismissal time and not replacing them at a key location; presenting at the Command Briefing that your squad had one apprehension out of 70 fare evasions with no evaluation, explanation or plan for improvement; and today with a canned response of Counseling for officers who fail to meet the bus check standard and then admitting that you don't keep track of who you counsel for shortcomings truly concerns me. I cannot have a Lieutenant who is just going through the motions. I need someone engaged in the mission of making the system safer. I need a Lieutenant who holds his officers accountable for not doing what is expected of them. What can I do to help you get into the right frame of mind?[64]

Mr. O'Brien responded later on April 18, "I am in the right frame of mind and I am doing my job. Thank you for offering your assistance I do appreciate it. I will respond to your email."[65] Chief Nestel forwarded Mr. O'Brien's response to Inspector Lawson and Captain Reynolds.[66] Inspector Lawson commented, "[s]trange response. When [Captain Reynolds] and I met with him I made a similar statement as yours. I told him he appears completely disconnected. He just stared at me and after a brief period of silence said only that he didn't think he was."[67]

Mr. O'Brien sent Chief Nestel a memorandum two days later responding to Chief Nestel's email.[68] Mr. O'Brien, among other things, disputed facts surrounding the lunch and bus check incidents referenced by Chief Nestel, stated his focus on helping manage the SEPTA Police Department, and admitted "[f]are evasion 1/70 is unacceptable" but stated he created and implemented a plan for improvement.[69] He ended the memorandum:

I fear this is an attempt to force me to retire. The policies procedures rules and regulations implemented and carried out by the command staff of the Transit Police Department have had a direct adverse effect on me and caused me to be treated less favorably because of my age.

The department has a duty and responsibility to protect its members in a fair ethical unbiased manner. The trail of email[] documentation being gathered by the command staff constitutes harassment and has created a hostile work environment.[70]

Chief Nestel forwarded Mr. O'Brien's April 20 memorandum to Jacqueline Hopkins, the Director of SEPTA's Employee Relations Department, on April 21, 2019, explaining "[i]n the below email discussion with me regarding performance, [Mr. O'Brien] has set forth a claim of age discrimination. Please accept this as my request for investigation in compliance with SEPTA policy."[71] Ms. Hopkins replied she would be assigning an investigator the same day.[72]

### *Mr. O'Brien formally complains of age discrimination.*

Mr. O'Brien filed a Complaint of Age Discrimination with SEPTA's Employee Relations Department on April 23, 2019.[73] Mr. O'Brien admits he filed this complaint after Inspector Lawson and Captain Reynolds advised him that he would be placed on a PIP.[74] The complaint alleged, among other things, (1) older employees feared they may be treated less favorably due to their age in Fall 2018; (2) the Department began filling the open Lieutenant positions with younger employees on February 10, 2019; (3) Chief Nestel "eluded to the…Department[']s interest in establishing a maximum retirement age policy" during an "Age Discrimination class" at SEPTA's headquarters on April 4, 2019; (4) the Department has a history of treating older employees less favorably because of their age; and (5) he feared the Department may attempt to force him to retire early.[75] Mr. O'Brien alleged SEPTA interviewed him in "[e]arly April 2019" and on April 16, 2019 for an Internal Affairs Complaint arising from an incident involving a vehicle pursuit by another lieutenant.[76]  SEPTA assigned Ms. Oduok to investigate Mr. O'Brien's complaint.[77]

Inspector Lawson met with Mr. O'Brien, gave him the written PIP memorandum, and formally placed him on a ninety-day PIP on April 25, 2019.[78] The PIP memorandum outlined several perceived deficiencies in Mr. O'Brien's performance in the "Attendance," "Communication," and "Initiative/Leadership" categories and provided suggestions for improvement.[79] With respect to Attendance, Inspector Lawson stated "[t]here is a pattern of extending time off from work by utilizing a combination of regularly schedule[d] days off, personal time and use of sick leave" and provided six specific examples of this pattern from the preceding twelve-month period.[80] Inspector Lawson cited to the specific SAM Policy this violated.[81] For Communication, Inspector Lawson noted Mr. O'Brien "frequently fail[ed] to reply to emails from superiors requesting information" and "completely missed important emails from the command staff, even when no reply was necessary."[82] Inspector Lawson provided three examples of such instances.[83] For Initiative/Leadership, Inspector Lawson stated Mr. O'Brien's failure at the supervisory level resulted in issues such as under performance at the patrol level and a reduction in fare evasion apprehension rates.[84] Inspector Lawson identified four examples from April 2019 of these supervisory deficiencies, including the poor fare evasion statistics addressed in the previous counseling form, a lag in completing paperwork, failure to act to control a large fight, and failure to keep adequate records on his personnel.[85]

Mr. O'Brien filed a Charge of Discrimination against SEPTA with the U.S. Equal Employment Opportunity Commission ("EEOC") on April 26, 2019, alleging age discrimination.[86] The EEOC sent SEPTA a Notice of Charge of Discrimination on April 30, 2019.[87] The EEOC sent SEPTA a Dismissal and Notice of Rights on May 14, 2019.[88] The Dismissal stated the EEOC closed Mr. O'Brien's file because "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes."[89]

***Mr. O'Brien challenges his placement on a PIP.***

Mr. O'Brien sent Ms. Oduok a memorandum on April 30, 2019 in response to his placement on a PIP, characterizing the information in the PIP as "largely inaccurate and highly exaggerated."[90]   Mr. O'Brien responded to alleged attendance issues, by claiming he informed Inspector Lawson of doctor's care for a medical issue and would be taking sick days.[91] Mr. O'Brien responded to the alleged communication issues by claiming he took off on the days referenced by Inspector Lawson in the PIP and had provided Inspector Lawson his off-duty contact number.[92] Mr. O'Brien responded to the leadership and initiative deficiencies stating, among other things, Inspector Lawson failed to mention the fare evasion apprehension rate improved in his district.[93]

Mr. O'Brien emailed Laila Burns, a SEPTA Employee Relations Department employee, on June 5, 2019 to formally appeal his PIP.[94] Ms. Burns responded by asking Mr. O'Brien to detail in writing exactly what he disputed in the PIP and provide accompanying evidence.[95] Mr. O'Brien referred Ms. Burns to his April 30 memorandum.[96] Inspector Lawson sent Mr. O'Brien a memorandum on June 14, 2019 attempting to answer each of Mr. O'Brien's objections in his April 30 memorandum and detail the facts he considered in implementing the PIP.[97] Inspector Lawson, among other things, included a chart detailing fare evasion apprehension statistics in District 7C for a thirteen-week period and its comparative ranking to other patrol districts.[98] Inspector Lawson sent Mr. O'Brien an amended memorandum on July 22, 2019 in which he acknowledged Mr. O'Brien provided him with an off-duty number; the remainder of the memorandum remained unchanged from the June 14, 2019 memorandum.[99]

Mr. O'Brien emailed Ms. Burns regarding Inspector Lawson's July 22 memorandum, claiming Inspector Lawson provided inaccurate fare evasion apprehension statistics.[100] Ms. Burns notified Inspector Lawson of Mr. O'Brien's disagreement.[101] Inspector Lawson informed Ms.

Burns the statistics he cited in his memorandum came directly from the Department's record management system and provided the spreadsheet supplying the data.[102] Ms. Burns emailed Chief Nestel and Stephanie Deiger, SEPTA's Assistant General Manager, on October 7, 2019, attaching a memorandum recommending SEPTA uphold Mr. O'Brien's PIP.[103] Chief Nestel agreed with Ms. Burns' recommendation.[104]

### Mr. O'Brien's conduct during his placement on a PIP.

Inspector Lawson met with Mr. O'Brien on a bi-monthly basis during his PIP placement.[105] Inspector Lawson and Mr. O'Brien discussed Mr. O'Brien's progress in the problem areas identified in the PIP and ways to continue improving.[106]

A Police Board of Inquiry issued Mr. O'Brien discipline on May 29, 2019 for an alleged failure to gather information about, and terminate, an almost ten-minute vehicle pursuit by another lieutenant while Mr. O'Brien had Watch Command duty.[107] Mr. O'Brien received a one day suspension without pay due to his resulting policy violations.[108] Mr. O'Brien appealed the one day suspension.[109] SEPTA assigned Inspector Jahlee Hatchett to investigate the discipline.[110] Inspector Hatchett denied Mr. O'Brien's appeal.[111]

Chief Nestel emailed Inspector Lawson and Captain Reynolds about Mr. O'Brien's performance on July 3, 2019.[112] Chief Nestel wrote, in relevant part, "I don't know how [Mr. O'Brien] has been doing on his PIP, but he is on his A game tonight…His performance tonight was worth mentioning."[113] Mr. O'Brien took a leave of absence from SEPTA from August 14, 2019 until August 27, 2019.[114]

A Police Board of Inquiry again disciplined Mr. O'Brien on August 22, 2019 in connection with his alleged failure to properly respond to a shooting of two individuals.[115] SEPTA issued Mr.

O'Brien a three-day suspension in connection with the incident.[116] Mr. O'Brien appealed the discipline.[117] SEPTA did not resolve this appeal before Mr. O'Brien retired from his position.[118]

### SEPTA extends Mr. O'Brien's placement on a PIP and Mr. O'Brien retires.

Inspector Lawson issued Mr. O'Brien a memorandum on September 6, 2019, extending Mr. O'Brien's PIP until October 31, 2019.[119] Inspector Lawson outlined five shortcomings Mr. O'Brien exhibited during his PIP: (1) failing to improve low fare evasion apprehension rates; (2) failing to address a direct report who did not complete paperwork in a timely manner; (3) remaining disengaged by failing to properly supervise and lead; (4) submitting inadequate paperwork; and (5) permitting subordinates to take vacation at the same time as him, leaving the district without any supervisors.[120] Inspector Lawson ended his memorandum to Mr. O'Brien by stating, "I remain confident in your ability to turn this around."[121]

Mr. O'Brien applied to retire four days after Inspector Lawson's memorandum but effective November 1, 2019.[122] Mr. O'Brien took another leave of absence in late September 2019 until his retirement.[123]

Mr. O'Brien filed another Charge of Discrimination with the EEOC on January 30, 2020 alleging age discrimination and retaliation.[124] He cross-filed with the Pennsylvania Human Relations Commission.[125] The EEOC issued a Dismissal and Notice of Rights on September 2, 2020.[126] Mr. O'Brien timely sued SEPTA on November 23, 2020 alleging unlawful discrimination and retaliation under the Age Discrimination in Employment Act and the Pennsylvania Human Rights Act.[127]   He claimed, among other things, SEPTA began inaccurately reporting his performance and subjecting him to discipline to force him to retire. For example, he alleged his superiors at SEPTA commented on establishing a mandatory retirement age, stated their intent to replace older lieutenants with younger ones, and placed him on a PIP based due to performance

deficiencies he disputed. He further alleges SEPTA continued to engage in adverse actions because he complained of age discrimination.

## II.    Analysis

SEPTA moves for summary judgment following discovery.[128] It argues Mr. O'Brien fails to establish a prima facie case of retaliation or discrimination based on age and, even if he satisfies a prima facie case, he cannot show pretext.[129] Mr. O'Brien responds there is evidence in the record of a prima facie case of retaliation based on age and there are material facts in dispute as to whether SEPTA's reasons for discipline are pretext for age discrimination.

But Mr. O'Brien's "evidence" is his allegations. He offers no outside basis other than his say-so. Our careful review of the record confirms Mr. O'Brien fails to adduce genuine disputes of material fact with respect to his discrimination and retaliation claims. He fails to establish a prima facie case of discrimination and, even assuming he does, he fails to establish pretext. He fails to show a temporal connection between his age discrimination complaints and the discipline, resulting performance plan, and eventual departure as an employee. We grant summary judgment in favor of SEPTA on Mr. O'Brien's age discrimination and retaliation claims.

### A.    We grant summary judgment on Mr. O'Brien's age discrimination claim.

Mr. O'Brien initially claims SEPTA discriminated against him based on his age by falsely subjecting him to discipline, leading to his constructive discharge. He alleges, for example, SEPTA misrepresented his performance on his PIP and elsewhere "as a pretext for age discrimination" and "with [the] intent to terminate [him] or force [him] to retire."[130] He further alleges, among other things, his superiors made remarks about establishing a mandatory retirement age and that SEPTA began replacing older lieutenants with younger ones.[131]

We apply the three-part framework of *McDonnell Douglas*[132] to Mr. O'Brien's age discrimination claim.[133] Under this framework, Mr. O'Brien must first establish a prima facie case of discrimination which requires Mr. O'Brien show (1) he is forty years of age or older; (2) he suffered an adverse employment action; (3) he is qualified for the position; and (4) he was replaced by another employee sufficiently younger to support an inference of discrimination.[134] "To establish a prima facie case at summary judgment, 'the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case.'"[135]

If Mr. O'Brien establishes a prima facie case of age discrimination, the burden shifts to SEPTA to show a legitimate, non-discriminatory reason for its adverse employment action.[136] If SEPTA meets its burden, the burden shifts back to Mr. O'Brien to show SEPTA's proffered reason is pretext.[137] At the summary judgment stage, Mr. O'Brien can show pretext in one of two ways: (1) he "may point to evidence in the record that would cause a reasonable juror to disbelieve [SEPTA's] articulated legitimate non-discriminatory reason, thereby creating a genuine dispute of material fact as to the credibility of that reason"; or (2) "by pointing to evidence that indicates that [SEPTA] acted with discriminatory animus."[138] Mr. O'Brien must show age was the "but-for" cause for SEPTA's adverse employment action."[139]

SEPTA concedes Mr. O'Brien can establish the first, third, and fourth elements of a prima facie case of age discrimination but argues Mr. O'Brien fails to show he suffered an adverse employment action. Even assuming Mr. O'Brien establishes a prima facie case, SEPTA argues his claim fails because he cannot show its legitimate, non-discriminatory reasons for its adverse actions were a pretext for discrimination. Mr. O'Brien argues he suffered an adverse employment action because SEPTA constructively discharged him. He further argues he raises a genuine dispute of material fact as to pretext precluding summary judgment.[140]

We agree with SEPTA and grant summary judgment on Mr. O'Brien's discrimination claim. Mr. O'Brien does not adduce evidence he suffered an adverse employment action based on the September 6,2019 extension of his Performance Improvement Plan and, even assuming he does, he fails to establish SEPTA's reasons for extending his Performance Improvement Plan are pretext for age discrimination animus.

### 1. Mr. O'Brien fails to establish a prima facie case of age discrimination because he did not suffer an adverse employment action.

SEPTA first argues Mr. O'Brien fails to establish a prima facie case of discrimination because he voluntarily retired, and placement on a PIP alone cannot constitute an adverse employment action. Mr. O'Brien concedes placement on a PIP alone is not an adverse employment action but argues the PIP and its subsequent extension, especially when considered with his previous disciplines, "would advance [him] along SEPTA's progressive discipline path to termination, effectively making it…a 'threat of discharge.'"[141] He further argues he "identified a months-long pattern of criticisms based on varying standards of performance never before demanded of him," which would allow a reasonable juror to find he was constructively discharged.[142]

To demonstrate an adverse employment action, Mr. O'Brien must demonstrate "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[143] An employee's voluntary retirement or resignation does not constitute an adverse employment action unless the employee can demonstrate he was constructively discharged.[144] "Constructive discharge occurs when an employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign."[145] "[I]ntolerability…is assessed by the objective standard of whether a reasonable person

in the employee's position would have felt compelled to resign – that is, whether he would have had no choice but to resign."[146] Our Court of Appeals has identified several factors which may indicate constructive discharge: "(1) threat of discharge; (2) suggesting or encouraging resignation; (3) a demotion or reduction of pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and (6) unsatisfactory job evaluations."[147]

Mr. O'Brien fails to raise a genuine dispute of material fact as to whether SEPTA constructively discharged him. Mr. O'Brien fails to demonstrate SEPTA made the conditions of his employment so intolerable that a reasonable person subject to them would feel compelled to resign. He disputes the accuracy of the data SEPTA used in evaluating his performance, including his fare evasion apprehension rates and absenteeism, but fails to provide evidence – besides his unsupported assertions – to support his position. He further fails to address various other performance deficiencies cited by SEPTA in the PIP and other discipline, such as his failure to submit paperwork in a timely manner.

Even assuming he could demonstrate SEPTA falsified these performance metrics, Mr. O'Brien fails to show SEPTA subjected him to adverse actions from which we could infer constructive discharge. SEPTA issued Mr. O'Brien discipline and allowed him to appeal these disciplines. SEPTA further placed Mr. O'Brien on a PIP and later extended his placement on the PIP when Mr. O'Brien failed to markedly improve. Our Court of Appeals has held placement on a PIP does not qualify as an adverse employment action absent accompanying adverse changes in the conditions of employment because "far from working a change in employment status, a PIP is a method of conveying to an employee the ways in which that employee can better perform their duties that he or she already has."[148] Mr. O'Brien fails to adduce evidence of accompanying adverse changes to his employment. He does not demonstrate SEPTA demoted him, encouraged

him to retire, threatened to discharge him, or otherwise adversely affected his employment. The evidence conversely shows SEPTA repeatedly attempted to assist and encourage Mr. O'Brien to get back on track. We cannot find genuine issues of material fact allowing the jury to consider whether SEPTA constructively discharged Mr. O'Brien.

>    2.    **Even assuming Mr. O'Brien can show constructive discharge, Mr. O'Brien's discrimination claim fails because he cannot establish pretext.**

Even assuming we could find disputed fact issues as to constructive discharge, we would then apply the next step of the *McDonnell Douglas* framework shifting the burden of production shifts to SEPTA to articulate a legitimate, non-discriminatory reason for the adverse employment action.[149] SEPTA can meet this "relatively light" burden by "provid[ing] evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason."[150] SEPTA "need not prove that the articulated reason actually motivated its conduct" at this stage.[151]

SEPTA meets this burden. "Courts within this district have routinely accepted evidence of a plaintiff's failure to meet expected performance goals, in addition to poor work performance, as facially legitimate-non-discriminatory reasons for adverse employment decisions."[152] SEPTA has produced ample documentation of Mr. O'Brien's continuing performance deficiencies, including through (1) performance evaluations demonstrating low ratings in certain categories; (2) placement on a PIP for issues relating to absenteeism, leadership, and communication; (3) disciplines for various incidents investigated by police boards of inquiry; and (4) extension of his placement on a PIP for failing to adequately address deficiencies. Mr. O'Brien does not dispute these events occurred. SEPTA produced sufficient evidence of extending the PIP and discipline steps for legitimate, non-discriminatory reasons.[153]

The burden of production under the *McDonnell Douglas* framework then shifts back to Mr. O'Brien to adduce evidence from which a factfinder could reasonably infer SEPTA's proffered justification is merely a pretext for discrimination.[154] To demonstrate pretext, Mr. O'Brien "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[155]

As to the first method of establishing pretext, Mr. O'Brien's evidence, if it relates to the credibility of the employer's proffered justification, "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"[156] He "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."[157] And "where an employer relies on particular criticisms for the adverse employment action, 'the issue is not whether the [] criticisms of [the plaintiff] were substantial or valid….[T]he question is whether [the employer] believed those criticism to be accurate and relied upon them.'"[158] An employee's mere disagreement with his employer's evaluation of him cannot prove pretext.[159] An employee must instead present "'evidence contradicting the *core facts* put forward by the employer as the legitimate reason for its decision.'"[160]

SEPTA argues Mr. O'Brien fails to prove pretext under the first method because, at most, the evidence indisputably shows he disagreed with SEPTA's evaluation of metrics like his fare evasion apprehension rates and absenteeism. SEPTA further argues Mr. O'Brien cannot prove

pretext because independent police boards of inquiry issued Mr. O'Brien's 2019 disciplines and disinterested third-parties also handled Mr. O'Brien's appeals of his placement on a PIP and discipline. We agree.

Judge Baylson's decision in *Cridland v. Kmart Corporation* is instructive.[161] In *Cridland*, a Kmart store manager brought an age discrimination claim against Kmart after it terminated him for alleged poor performance.[162] Kmart moved for summary judgment, arguing the manager failed to establish the reason for his termination was pretextual.[163] Judge Baylson agreed, explaining Kmart adduced evidence three of the manager's superiors found his performance to be deficient, two district managers placed him on a PIP, he received multiple disciplines, and his store failed to be certified on multiple dates.[164] Judge Baylson further explained the "[manager] submitted no evidence refuting these 'core facts' of Kmart's dissatisfaction – no evidence that [the manager] received positive reviews, no evidence that he was showing signs of consistent improvement, and no evidence that he was managing his store according to the company's expectations."[165] And while the manager testified his superiors exaggerated his deficiencies because Kmart wanted to get rid of him due to his age, he failed to present any concrete evidence supporting that allegation.[166]

In *Robinson v. Mondelez International, Inc.*, Judge Pratter similarly granted summary judgment to an employer on an age discrimination claim where the employee, a sales representative, failed to cite record evidence demonstrating the employer's legitimate reasons for his termination – including documented performance issues including poor sales, out of stock items, unacceptable and light shelf conditions, and poor communication with store management – were a pretext for discrimination.[167] The employee argued, among other things, he received praise for his performance the year before his termination and his sales numbers were on target in the

final few months of his employment.[168] Judge Pratter rejected these arguments, explaining pretext cannot be established simply because the employee received some positive evaluations.[169] Judge Pratter further explained the employee "does not provide any evidence that the litany of complaints that [the employer] had with his performance were unfounded, and it is clear that sales numbers were not the only concern that [the employer] had with [his] performance."[170] The employee further cited to statements made by his supervisors asking him if he planned to retire, which he claimed showed age bias.[171] Judge Pratter stated those comments could not overcome the employer's legitimate reasons for his employment because they were made outside of the context of the decision-making process and were "innocuous on their face."[172]

Like the employees in *Cridland* and *Robinson*, Mr. O'Brien fails to adduce evidence refuting or contradicting SEPTA's evaluation of his performance. He disagrees with certain metrics used by SEPTA, like the fare evasion apprehension statistics and absenteeism data, but does not support his disputes with concrete evidence, nor do his disputes go to the core facts of the deficiencies. For example, he disputed his absenteeism issues – which included a documented pattern of extending time off by taking sick leave either directly before or after regularly scheduled days off and personal days – by stating he was under a doctor's care for a medical issue but not addressing the issue of combining sick leave with other days off, which implicated a SAM policy. He also disputed the documented fare evasion apprehension rate deficiencies by stating, without any evidence, the rate improved under his tenure; he crucially failed to undermine the statistics from his district or others with any evidence of his own.  And like the sales representative in *Robinson*, he wholly fails to address other documented deficiencies and disciplines investigated and reviewed by several SEPTA employees. He speculates SEPTA exaggerated his deficiencies

to fire him because of his age, but he fails to present evidence in support of this theory. He fails to establish pretext by undermining SEPTA's proffered reasons for its adverse action.

To establish pretext under the second method, Mr. O'Brien must "present[] evidence 'with sufficient probative force' so as to allow the factfinder to 'conclude by a preponderance of the evidence that age was a motivating or determinative factor.'"[173] Mr. O'Brien can prove pretext this way by pointing to evidence showing: "(1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within plaintiff's protected class; or (3) the defendant has treated similarly situated, substantially younger individuals more favorably."[174] Mr. O'Brien fails under this standard as well.

Mr. O'Brien fails to provide evidence any of his superiors – including Captain Reynolds, Inspector Lawson, and Chief Nestel – previously discriminated against him based on his age. He alleges his superiors made a few age-based remarks, including by asking him about retirement or expressing an interest at a training in establishing a mandatory retirement age for SEPTA police officers. Even assuming these allegations are true, such statements are insufficient to support a discrimination claim against SEPTA.[175] Mr. O'Brien also fails to adduce any evidence SEPTA discriminated against other employees based on age or treated younger, similarly situated employees more favorably. He does not cite to any deposition testimony or affidavit from co-workers. He only provides unsupported assertions SEPTA began hiring younger lieutenants. Mr. O'Brien cannot prove pretext with these bare-boned, unsupported theories.[176]

In sum, we grant summary judgment on Mr. O'Brien's discrimination claim under the ADEA because he fails to prove he was constructively discharged and, even if he did, he fails to prove SEPTA's legitimate, non-discriminatory reasons for its adverse action were pretextual.

### B.    We grant summary judgment on Mr. O'Brien's retaliation claim.

Mr. O'Brien claims SEPTA retaliated against him by improperly subjecting him to discipline – which ultimately led to his constructive discharge – because he complained of age discrimination. SEPTA argues Mr. O'Brien fails to establish a prima facie case of retaliation because he cannot show a causal connection between his protected activity and any of SEPTA's adverse actions.[177] Even assuming Mr. O'Brien could establish a prima facie case of retaliation, SEPTA argues Mr. O'Brien's claim fails because he cannot show SEPTA's legitimate, non-discriminatory reasons for taking any action were a pretext for retaliation. We agree.

To establish a prima facie case of retaliation under the *McDonnell Douglas* framework, Mr. O'Brien must demonstrate (1) he engaged in protected activity; (2) SEPTA took adverse action against him; and (3) a causal link exists between the protected activity and SEPTA's adverse action.[178] A causal link can be established in two ways. First, "[w]here the temporal proximity between the protected activity and the adverse action is unusually suggestive, it is sufficient standing alone to create an inference of causality and defeat summary judgment."[179] Alternatively, even if no temporal proximity exists, we must determine "whether the proffered evidence, looked at as a whole, may suffice to raise the inference."[180] "This can include an 'intervening pattern of antagonism' between the protected activity and the adverse action that is 'so strong that it [overcomes] the lack of temporal proximity.'"[181]

SEPTA argues Mr. O'Brien fails to establish a causal link between adverse actions and his protected activity because (1) the decision to place Mr. O'Brien on a PIP and the investigation leading to his first discipline in 2019 began *before* Mr. O'Brien engaged in any protected activities and (2) alleged adverse actions occurring *after* the protected activities did not have unusually suggestive temporal proximity or any other evidence of antagonism to support any alleged causal

connection. Mr. O'Brien argues the adverse actions supporting the retaliation claim occurred in July and September 2019 – when Inspector Lawson extended Mr. O'Brien's PIP – after Chief Nestel and SEPTA learned of Mr. O'Brien's April 2019 complaint. We agree with SEPTA.

Mr. O'Brien fails to establish a causal link between his complaints and SEPTA's alleged adverse actions. As SEPTA points out (and Mr. O'Brien admits), Inspector Lawson informed Mr. O'Brien of SEPTA's decision to place him on a PIP on April 11, 2019, nine days *before* he first complained of age discrimination to Chief Nestel. Mr. O'Brien also admits he had been questioned about his May 2019 discipline *before* he filed any of his complaints.  Our Court of Appeals "has declined to infer…a causal link where an employee's negative performance evaluations predate[s] any protected activity."[182] In *Verma*, our Court of Appeals affirmed summary judgment in favor of an employer on a Title VII retaliation claim where the employee received negative performance evaluations from her supervisors and had various conflicts with her supervisors months before she initiated any complaints against her employer.[183]  As in *Verma*, the evidence shows SEPTA initiated performance obligations upon Mr. O'Brien before he complained of age discrimination, internally or otherwise. This timeline undermines an inference of a causal connection between Mr. O'Brien's complaints and SEPTA's alleged adverse actions, especially as to its implementation of the PIP or May 2019 discipline.

Mr. O'Brien similarly fails to adduce evidence from which a reasonable juror could find a causal connection between his complaints and alleged adverse actions occurring after these complaints. After Mr. O'Brien engaged in protected activity in late April 2019, SEPTA issued discipline in late August 2019 and then extended his placement on the PIP on September 6, 2019, over four months after the complaints. Courts in our Circuit consistently find an employee cannot establish a causal connection through temporal proximity where an adverse action does not occur

for several months after protected activity.[184] Consistent with this reasoning, we cannot infer a causal connection sufficient to support a retaliation claim based on temporal proximity alone.

Nor does Mr. O'Brien adduce evidence of a pattern of antagonism or other circumstantial evidence of a retaliatory motive during these intervening four months which could overcome this lack of temporal proximity. To establish a causal connection at the summary judgment stage, Mr. O'Brien must point to specific acts of antagonism or adduce evidence of inconsistent reasons given by SEPTA for its adverse actions.[185] Mr. O'Brien cites no such evidence. The evidence instead shows SEPTA continued to try to rehabilitate Mr. O'Brien rather than disparage or antagonize him. Inspector Lawson's explained in his September 6, 2019 memorandum, for example, he "remain[ed] confident in [Mr. O'Brien's] ability to turn this around" and further stated he saw improvement in Mr. O'Brien's ability to direct his work force over police radio and his absenteeism. Chief Nestel further noted in a July 3, 2019 email to Inspector Lawson and Captain Reynolds that Mr. O'Brien was "on his A game" that day and thought this good performance "was worth mentioning." Mr. O'Brien also cannot point to any evidence – besides his unsupported assertions – demonstrating inconsistent reasons given by SEPTA as to its extension of his placement on the PIP or any other issuance of discipline.

Even assuming Mr. O'Brien established a causal connection between his protected activity and SEPTA's alleged adverse action, he fails to raise a genuine dispute of material fact as to SEPTA's motivation for its action. As previously discussed, Mr. O'Brien fails to show SEPTA's articulated legitimate non-discriminatory reason for its adverse action was a pretext for discrimination.

III.   **Conclusion**

We grant summary judgment to SEPTA on Mr. O'Brien's age discrimination and retaliation claims, as well as a largely unplead and abandoned claim of a hostile work environment based on age.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. SEPTA filed its Motion and brief in support of summary judgment and SUMF at ECF Doc. No. 14. Mr. O'Brien responded to the Motion at ECF Doc. No. 17. SEPTA filed an Appendix at ECF Doc. No. 14-3. References to SEPTA's Appendix are by the Bates numbers in the Appendix, for example "a001." Mr. O'Brien filed a supplemental appendix at ECF Doc. No. 16-1. We cite to his appendix using its ECF number and corresponding pagination.

[2] a044-a046, a245.

[3] a046.

[4] *Id.*

[5] *Id.*

[6] a055-a066.

[7] a047-a048.

[8] a048.

[9] a049.

[10] a050.

[11] a081-a084.

[12] a047.

[13] a068.

[14] a069-a070; a246.

[15] a071-a072.

[16] a072-a073.

[17] a074.

[18] a074-a075.

[19] a076.

[20] a068.

[21] a069.

[22] a254

[23] a087.

[24] a087.

[25] a261-a262.

[26] a261.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] a261-a262.

[31] a092.

[32] a279.

[33] a279.

[34] a273-a278.

[35] a274-a275.

[36] a275.

[37] *Id.*

[38] a274.

[39] a263.

[40] a263-a264.

[41] a264.

[42] a265.

[43] a275.

[44] *Id.*

[45] a276. Mr. O'Brien also alleged Captain Reynolds issued his November 2017 discipline without giving him an opportunity to respond. *Id.* He made these allegations before Captain Jones withdrew his November 2017 discipline on January 31, 2018.

[46] a102, a280.

[47] a103.

[48] a267.

[49] *Id.*

[50] a267-a268.

[51] a050-a052.

[52] a051.

[53] a239.

[54] a053.

[55] a053-a054.

[56] a239.

[57] a114-a115.

[58] a295.

[59] *Id.*

[60] a150.

[61] a4, a24, a115.

[62] *Id.*

[63] a300.

[64] a301.

[65] *Id.*

[66] a302.

[67] *Id.*

[68] a304-a305.

[69] a304.

[70] a305.

[71] a310.

[72] *Id.*

[73] a312-a317.

[74] a127.

[75] a312-a317.

[76] a315-a316.

[77] a319.

[78] a116, a118; a320.

[79] a320-a324.

[80] a320-a321.

[81] a321.

[82] *Id.*

[83] a321-a322.

[84] a322.

[85] a323.

[86] a127-a128.

[87] a328.

[88] a329.

[89] *Id.*

[90] a326-a327.

[91] a326.

[92] *Id.*

[93] a327.

[94] a337.

[95] a338.

[96] *Id.*

[97] a340-342.

[98] a341-a342.

[99] a347-a352, a354.

[100] a353.

[101] a352-a353.

[102] a352; a343-a345.

[103] a363-a366.

[104] a363.

[105] a330-a334.

[106] *Id.*

[107] a335-a336.

[108] a336.

[109] a339.

[110] a351.

[111] a361-a362.

[112] a346.

[113] *Id.*

[114] a079-a080.

[115] a356.

[116] *Id.*

[117] a357.

[118] a150.

[119] a358-a359.

[120] a358-a359.

[121] a359.

[122] a360.

[123] a080.

[124] a035-a037.

[125] a035.

[126] a038.

[127] ECF Doc. No. 1.

[128] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the

evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[129] ECF Doc. No. 14. SEPTA also moves for summary judgment on a hostile work environment claim "[a]lthough not specifically pleaded in the Complaint…." ECF Doc. No. 14-1 at 27. Mr. O'Brien does not respond to SEPTA's arguments as to this claim. To prevail on a hostile work environment claim under the ADEA, Mr. O'Brien must show: "(1) he suffered intentional discrimination because of his age; (2) the harassment was severe or pervasive; (3) the harassment detrimentally affected him; (4) the harassment would detrimentally affect a reasonable person in that position; and (5) respondeat superior liability." *Howell v. Millersville Univ. of Pennsylvania*, 283 F. Supp. 3d 309, 332 (E.D. Pa. 2017) (citing *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006)). To determine whether harassment is severe or pervasive, courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Id.* at 333 (quoting *Whitesell v. Dobson Commc'n*, 353 F. App'x 715, 717 (3d Cir. 2009)). Mr. O'Brien cannot establish a hostile work environment claim because he has not adduced evidence he suffered intentional discrimination because of his age or that it was severe or pervasive. Mr. O'Brien can only point to one general age-based remark regarding a retirement age for police officers. Mr. O'Brien cannot show SEPTA's other alleged conduct towards Mr. O'Brien – including his performance reviews and placement on a performance improvement plan – had anything to do with his age. Mr. O'Brien cannot sustain a hostile work environment claim at this stage without such evidence. *See id.* at 332-33 (granting summary judgment to an employer on a hostile work environment claim where the employee failed to produce evidence "other than a handful of isolated statements by Defendants and the conjecture of [other employees] that any adverse treatment they suffered was because of their age").

[130] ECF Doc. No. 1 ¶¶ 28-29.

[131] *Id.* ¶¶ 22, 32.

[132] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[133] *Willis v. UPMC Child. Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015)

[134] *Id.* (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)).

[135] *Burton*, 707 F.3d at 426 (quoting *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001)).

[136] *Vaughn v. Boeing Co.*, 733 F. App'x 617, 622 (3d Cir. 2018) (citing *McDonnell Douglas*, 411 U.S. at 802).

[137] *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

[138] *Burton*, 707 F.3d at 430-31 (citing *Fuentes v. Perksie*, 32 F.3d 759, 764 (3d Cir. 1994)).

[139] *Willis*, 808 F.3d at 644 (citing *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177-78 (2009)).

[140] Mr. O'Brien asserts these arguments with respect to his retaliation claim but we apply them to his discrimination claim as well.

[141] ECF Doc. No. 17 at 6.

[142] *Id.* at 6-8.

[143] *Swain v. City of Vineland*, 457 F. App'x 107, 110 (3d Cir. 2012) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

[144] *Gunn v. On the Border Acquisitions, LLC*, 298 F. Supp. 3d 811, 823 (E.D. Pa. 2018) (citing *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 705 (E.D. Pa. 2016)).

[145] *Embrico v. U.S. Steel Corp.*, 245 F. App'x 184, 187 (3d Cir. 2007) (quoting *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.4 (3d Cir. 2006)).

[146] *Id.* (quoting *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998)).

[147] *Lebofsky v. City of Philadelphia*, 394 F. App'x 935, 939 (3d Cir. 2010) (citing *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993)).

[148] *Reynolds v. Dep't. of Army*, 439 F. App'x 150, 154-55 (3d Cir. 2011).

[149] *Burton*, 707 F.3d at 426 (citations omitted).

[150] *Id.* (citations and quotations omitted).

[151] *Id.* (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)).

[152] *DeCicco v. Mid-Atlantic Healthcare, Inc.*, 275 F. Supp. 3d 546, 555 (E.D. Pa. 2017) (collecting cases).

[153] *Id.* at 556 (concluding employer produced sufficient evidence of a legitimate non-discriminatory reason for an employee's termination where the employee did not dispute he, among other things, was placed on multiple performance action plans and received various other oral and written warnings during his employment).

[154] *Burton*, 707 F.3d at 427 (citations omitted).

[155] *Id.* (quoting *Fuentes*, 32 F.3d at 764).

[156] *Fuentes*, 32 F.3d at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).

[157] *Id.* (citing *Ezold*, 983 F.2d at 531).

[158] *DeCicco*, 275 F. Supp. 3d at 557 (quoting *Steward v. Sears Roebuck & Co.*, 231 F. App'x 201, 210 (3d Cir. 2007)).

[159] *Id.* (citing *Farzan v. Vanguard Grp., Inc.*, 582 F. App'x 105, 108 (3d Cir. 2014)).

[160] *McGrath v. Lumbermens Merch. Corp.*, 851 F. Supp. 2d 885, 860-61 (E.D. Pa. 2012) (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (emphasis in original).

[161] 929 F. Supp. 2d 377, 387-90 (E.D. Pa. 2013).

[162] *Id.* at 380-83.

[163] *Id.* at 387.

[164] *Id.* at 387-88.

[165] *Id.*

[166] *Id.* at 388.

[167] 228 F. Supp. 3d 448, 454-55 (E.D. Pa. 2017); *see also DeCicco*, 275 F. Supp. 3d at 556-57 (granting summary judgment to an employer in an age discrimination because the employee failed to contradict the employer's legitimate reasons for his termination, including failing to meet the requirements of his PIP, ongoing work performance, and unprofessional conduct in working outside the scope of his position to launch an independent investigation of his supervisor's attendance record, by pointing to record evidence from which a reasonable fact finder could conclude the employer's legitimate reasons were "unworthy of credence").

[168] *Id.* at 455.

[169] *Id.*

[170] *Id.*

[171] *Id.*

[172] *Id.*

[173] *Willis*, 808 F.3d at 645 (quoting *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644-45 (3d Cir. 1998)).

[174] *Id.* (citing *Simpson*, 142 F.3d at 645).

[175] *See Robinson*, 228 F. Supp. 3d at 455; *see also Salkovitz v. Pioneer Electronics (USA), Inc.*, 188 F. App'x 90, 94 (3d Cir. 2006) (affirming grant of summary judgment to an employer in an age discrimination case where the employee pointed to a handful of documented remarks about his age and retirement plans which were not connected to his termination or to any discriminatory motive).

[176] *See id.* at 649-50 (concluding a neonatal nurse failed to prove pretext under the second method based on (1) one question from leadership about when she planned to retire; (2) the replacement of experienced staff with inexperienced nurses; and (3) an unsupported assertion younger employees were not reported or otherwise disciplined for using profanity).

[177] SEPTA, relying on its argument Mr. O'Brien cannot show he suffered an adverse employment action, also argues Mr. O'Brien cannot show SEPTA took an adverse action against him and thus cannot establish a prima facie case of retaliation. An adverse action in this context is broader and has been defined as an action a reasonable employee would find "materially adverse" in that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). We need not decide whether SEPTA's actions constituted adverse employment actions in this context because, even if they did, there is no causal connection between his complaints about age discrimination and these alleged adverse actions.

[178] *Daniels v. Sch. Dist. of Phila.*, 982 F. Supp. 2d 462, 482 (E.D. Pa. Nov. 7, 2013) (citing *Kachmar v. SunGard Data Sys., Inc.*, 109 F. 3d 173, 177 (3d Cir. 1997)).

[179] *Id.* at 483 (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr.*, 503 F.3d 217, 232 (3d Cir.2007)).

[180] *Id.* (quoting *LeBoon*, 503 F.3d at 232).

[181] *Id.* (citing *Farell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)).

[182] *Verma v. Univ. of Pennsylvania*, 533 F. App'x 115, 119 (3d Cir. 2013) (citation omitted).

[183] *Id.*; *see also Gairloch v. Pennsylvania State Univ.*, 84 F. Supp. 3d 407, 420 (M.D. Pa. 2015) (granting summary judgment to employer on retaliation claim where employee admitted to poor relations with his employer and had documented performance deficiencies before he engaged in any protected activity).

[184] *See, e.g., Leboon,* 505 F.3d at 233 ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment."); *Gairloch*, 84 F. Supp. 3d at 421 (concluding an employee failed to establish a prima facie case of retaliation where six months passed between the employee's protected activity and the employer's adverse action); *Dooley*, 2009 WL 179726, at *18 ("Plaintiff has not established a causal relationship between implementation of the PIP and his complaint to the Human Resources Department. The PIP was imposed some six months after Plaintiff sought the intercession of the Human Resources Department. This passage of time dispels an inference of retaliatory motivation.").

[185] *See Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp.2d 678, 708-09 (W.D. Pa. 2014); *see also Robinson v. Southeastern Pennsylvania Transp. Auth., Red. Arrow Div.*, 982 F.2d 892, 895-96 (3d Cir. 1993) (finding sufficient evidence of a causal link to support a retaliation claim where the employer subjected the employee to a "constant barrage of written and verbal warnings…, inaccurate point totalings, and disciplinary action, all of which occurred soon after [employee's] initial complaints and continued until his discharge").